UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA    )
    )
    vs.    )    CAUSE NO. 3:11-CR-56(01)RM
    )
SHAUN BROOKS, JR.    )

<u>MEMORANDUM OPINION</u>

On December 6, the first day of trial, the court granted the defendant's fourth motion in limine. The court simply announced its ruling and informally outlined the reasons, with an opinion to follow. This is the promised opinion.

While in custody in May, 2010, Shaun Brooks, Jr. admitted to owning a locked Sentry case and gave police permission to search it. Mr. Brooks claims that permission was granted based on his understanding that the officer would be looking for drugs or stolen items. The pre-printed consent to search card, which Mr. Brooks signed at the time, gave permission to search the Sentry case and contained an acknowledgment that "[a]ny evidence of criminal conduct that I find will be used against you in a court of law." Fourth Motion to Suppress, Exh. 1. That search produced items common to the production of methamphetamine and led to the police obtaining a warrant to open the other case, which contained the firearms at the root of all four counts of the indictment.

About eighteen months later, a few days before trial, the government notified Mr. Brooks's counsel that the Sentry case had contained a camera memory card, the card contained a photo of Mr. Brooks with guns, and the government intended

to introduce that photo at trial. Mr. Brooks moved to suppress the images on the memory card.

The court must determine the scope of the consent given by Mr. Brooks to the police to search the Sentry case. When an officer gets consent to search for an item, he can only search "areas these items may reasonably be expected to be found." United States v. Garcia, 897 F.2d 1413, 1419 (7th Cir. 1990) ("Initially, we note that the scope of a consent search is limited by the breadth of the actual consent"). The search that follows consent is considered reasonable as long as it remains inside the scope of that consent. United States v. Jackson, 598 F.3d 340, 348 (7th Cir. 2010). What the scope was, and whether the search remained in that scope are questions of fact. Id.

"The scope of a search is generally defined by its expressed object." Florida v. Jimeno, 500 U.S. 248, 251 (1991); *accord* United States v. Jackson, 598 F.3d at 348. "Government agents may not obtain consent to search on the representation that they intend to look only for certain specified items and subsequently use that consent as a license to conduct a general exploratory search." United States v. Breit, 429 F.3d 725, 730 (7th Cir. 2005) (*quotation omitted*).

In United States v. Dichiarinte, 445 F.2d 126 (7th Cir. 1971), the police obtained consent to search Mr. Dichiarinte's house for narcotics; he said they could search all they wanted, he didn't have drugs in the house. Long into the search, the agents began looking at Mr. Dichiarinte's papers and he told them that

2

since the papers could not contain drugs, they were exceeding the scope of the consent. The officer is alleged to have replied, "Sorry, Pal, we are here now and this is what we are going to do." Mr. Dichiarinte was convicted of tax fraud based in part on the papers discovered during that search. The court of appeals overturned the conviction because the scope of consent worked in parallel to the scope of a warrant. "Thus if government agents obtain consent or a warrant to search for a stolen television set, they must limit their activity to that which is necessary to search for such an item; they may not rummage through private documents and personal papers." Id. at 130 n.2.

Mr. Brooks's motion turns on the scope of the search as created by the consent between Mr. Brooks and Lieutenant Steve Adang. "In determining the scope of a defendant's consent, we apply an objective standard: 'what would the typical reasonable person have understood by the exchange between the officer and the suspect?'" United States v. Long, 425 F.3d 482 (7th Cir. 2005), *quoting* United States v. Raney, 342 F.3d 551 (7th Cir. 2003). Therefore, the court must determine if a reasonable observer in the room with Mr. Brooks and Lieutenant Adang would have understood that the officer was accusing Mr. Brooks of possessing stolen items and was seeking permission to search the Sentry case for exactly that. The object of the search (for example, looking for stolen items) becomes the limiter of the scope of the search. *See* Florida v. Jimeno, 500 U.S. at 251.

Mr. Brooks and Lt. Adang spent a fair amount of the May 19, 2010 interview discussing whether Mr. Brooks would give consent for the search of the Sentry case. They went back and forth about what the box might contain and whether Mr. Brooks would give consent to search it. Ultimately, though, it appears that consent was given following this exchange:

| Lt. Adang: | Well, we have a reasonable belief that there might be criminal – there might be acts of criminal activity in there. You have a stolen iPod is there another one, or is there somethin' stolen there. You've got a drug warrant, is there drugs in there. Okay. Whatever criminal history you have is it consistent with your criminal history? Maybe. We don't know, you know. |
|---|---|
| Mr. Brooks: | Give me the card I'll sign it. |

Brooks May 19, 2010 interview, pg. 27.

In favor of the government's position that the scope of the Sentry case was unlimited, a typical reasonable person may understand Lt. Adang's comment that he wants to search for anything related to Mr. Brooks' past criminal history as a request to make a blanket search for evidence. For this to be so, Mr. Brooks and Lt. Adang both would have to have known about Mr. Brooks' criminal history in detail: Mr. Brooks would have to understand that Lt. Adang intended to search for weapons-related evidence.

In favor of Mr. Brooks's position is that Lt. Adang said specifically that he wanted to search for evidence of stolen property or drug crimes. When Mr. Brooks consented, it may have been in the nature of Mr. Dichiarinte's consent (*see* United States v. Dichiarinte, 445 F.2d 126 (7th Cir. 1971)), where he was asserting that

he had neither drugs nor stolen property, and the lieutenant could search for those things.

Mr. Brooks signed a waiver of rights card that included his acknowledgment that "[a]ny evidence of criminal conduct that I find will be used against you in a court of law." This statement weighs neither for not against the government or Mr. Brooks because it goes not to the scope of the search, but the understanding of the purpose of the search and the waiver of the right. Since this is standard language, to give it scope-widening powers would undo the concept of people being able to limit the scope of consent searches. There is no indication that the Supreme Court or the court of appeals intends to overturn cases like <u>Dichiarinte</u>, <u>Breit</u>, and <u>Jimeno</u>.

Mr. Brooks shared the photos on the memory card with Danielle Hughes in February 2010. The government asserts that this sharing amounts to Ms. Hughes searching the photographs, and, as long as the later government search didn't exceed the scope of Ms. Hughes' search, its action isn't cognizable under the Fourth Amendment. *See* <u>United States v. Jacobsen</u>, 466 U.S. 109 (1984) (finding that, where FedEx employees had opened a package and then called police about its contents, the resulting search of the contents was a recreation of the private search that did not violate the Constitution.)

A defendant must have both a subjective expectation of privacy and his expectation of privacy must be objectively reasonable, often phrased as "one that society is prepared to recognize as reasonable." *See* <u>Katz v. United States,</u> 389

U.S. 347, 361 (1967); *accord* <u>United States v. Villegas</u>, 495 F.3d 761, 767 (7th Cir. 2007). One who expects an item to remain private "must exhibit that expectation, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the defendant's allegedly invasive actions." <u>United States v. Yang</u>, 478 F.3d 832, 835 (7th Cir. 2007) (finding that voluntarily giving items to a police officer indicated that the defendant didn't expect them to remain private).

A variety of cases instruct that when something is shared, there is a lessened expectation of privacy in it. *See, e.g.* <u>United States v. Ladell</u>, 127 F.3d 622, 624 (7th Cir. 1997). These derive from the understanding that, when another person has possession of an item, he may invite the police in to search it. But that's not what happened here. Sharing an item reduces one's sense of privacy in the copy that is shared, but it doesn't eliminate one's privacy in the item retained by Mr. Brooks; otherwise, anything, once shared, would be subject to governmental search and seizure without the usual Fourth Amendment protections.

The court finds that Mr. Brooks consented to the search of the Sentry case while he was in custody in May 2010. The scope of that consent was limited to the objects of the search: stolen items and items related to drugs. The December 2011 search of the contents of the memory card exceeded the scope of the consent search, and wasn't done pursuant to a warrant or another exception to the warrant requirement. The contents of the memory card are not admissible at Mr. Brooks's trial.

ENTERED:  December 9, 2011


                                                _____/s/ Robert L. Miller, Jr._____
                                                Judge
                                                United States District Court